## MORALES v. ARCE.

### APPEAL from the District Court of Humacao.

No. 808.—Decided June 21, 1912.

PLEADINGS—MISJOINDER OF CAUSES OF ACTION—DEMURRER.—When a complaint is defective because of misjoinder of causes of action the defendant's relief is to demur to the complaint on that ground and not to file a motion praying the court to oblige the plaintiff to amend his complaint by setting out the distinct causes of action separately.

ID.—NON-JOINDER OF PARTIES DEFENDANT—DEMURRER.—A demurrer on the ground of non-joinder of parties defendant cannot be sustained unless such defect appears on the face of the complaint, and the demurrer should state the names of the necessary parties defendant not included in the complaint; if not, the demurrer is defective.

ID.—COUNTERCLAIM.—The principal object of a counterclaim is to claim money or to make a claim relative to accounts and not to raise questions regarding title to real or personal property.

ID.—INTERVENTION—ATTACHMENT—COUNTERCLAIM—FRAUDULENT CONVEYANCE— ACTIONS.—The provisions of section 112 of the Code of Civil Procedure are not applicable to intervention proceedings for dominion and, therefore, when in such proceedings the party who has obtained an attachment in his favor fails to allege in a counterclaim the fraudulent character of the title of the intervenor, he is not for that reason barred from instituting an action later for the rescission of the intervenor's title on the ground that it is a conveyance of a fraudulent character made to defraud the creditors.

ID.—ACTIONS—JOINDER OF ACTIONS—INTERVENTION—FRAUDULENT CONVEYANCE— RES JUDICATA.—An action for the rescission of a contract on the ground that it is a conveyance to defraud creditors cannot be joined with an action in intervention for dominion wherein the ownership of the attached property is in controversy, and a judgment rendered in such action in intervention for dominion cannot be pleaded afterwards on demurrer as res judicata in an action for the rescission of the title of the intervenor.

RESCISSION OF CONVEYANCE—FRAUDULENT CONVEYANCE.—The evidence in the case at bar having been examined, this court held that the existence of the debt, the insolvency of the debtor and the creditor's inability to enforce the judgment obtained against his debtor having been proved, these facts together with the other circumstances surrounding the case place beyond doubt the conclusion that the conveyance concerning which this action is brought was made to defraud the creditors and, therefore, may be rescinded.

ACTIONS — ANCILLARY ACTION — FRAUDULENT CONVEYANCE. — When a judgment debtor conveys his property rendering it impossible for his judgment creditor to collect the debt, an action lies for the rescission of the conveyance made by the debtor to defraud the creditor, and although a rescissory action has an ancillary character it does not lack for that reason all the elements constituting a principal action and it is absolutely independent of any other action.

FRAUDULENT CONVEYANCE—EVIDENCE OF INTENT TO DEFRAUD—REASONABLE DEGREE OF CERTAINTY.—The discovery of fraudulent intent is rarely possible by direct and conclusive evidence. To demand conclusive evidence in a case of fraud would be to attack and destroy the ends of justice. The law therefore only requires a reasonable degree of certainty.

FRAUDULENT INTENT—EVIDENCE OF FRAUD—CONFIDENTIAL RELATIONS.—In order to prove the existence of a fraudulent intent between persons having confidential relations it is sufficient to offer satisfactory evidence of the fraud.

ID.—PRESUMPTION OF FRAUD—ATTORNEY AND CLIENT.—When a judgment debtor conveys to his brother-in-law the only property he possesses, which property has been attached to secure the effectiveness of a judgment, the debtor's counsel in the suit wherein judgment was rendered against him having been his said brother-in-law to whom later he conveyed the attached property, the presumption allowed by section 1264 of the Revised Civil Code arises and no

evidence to destroy such presumption having been introduced such conveyance has a fraudulent character.

THIRD PARTY—INTERVENOR.—An intervenor who purchased the only property of a judgment debtor and who, therefore, has intervened as purchaser in the contract contested by the judgment creditor on the ground that it is fraudulent cannot invoke the character of a third party so that the provisions of paragraph 2 of section 1262 of the Revised Code may be applied to him.

FRAUDULENT CONVEYANCES—INDEMNITY FOR DAMAGES—AMOUNT OF INDEMNITY.— A person acquiring in bad faith property alienated to defraud creditors must indemnify said creditors for the damages caused to them by such alienation— that is, the amount of the credit with interest thereon—or the value of the property alienated plus the costs of the rescissory action.

The facts are stated in the opinion.

*Mr. Manuel Tous Soto* for appellant.

*Mr. Arturo Aponte, Jr.,* for respondent.

MR. JUSTICE MACLEARY delivered the opinion of the court.

This suit was brought in the District Court of Humacao on September 30, 1910, seeking to rescind a contract made between the defendants assigning certain rights and actions on the ground of fraud affecting creditors of the assignor. Issue was joined on the allegations of fraud and the case was submitted on written briefs and decided by the trial court on June 5, 1911, in favor of the plaintiff, from which judgment the defendant, Arce, the vendee in the contract, alone appealed. The transcript was filed here on February 15 last, and the case was heard on May 3 following.

On September 30, 1910, José E. Morales filed a complaint in the District Court of Humacao against Jacinto Blanco Carvajal and Rafael Arce Rollet, wherein he alleged the following facts:

"First. That on March 12, 1907, and prior to that date, the defendant, Jacinto Blanco, was indebted to the firm of Delgado & Díaz, of Aguas Buenas, in the sum of $403.25, and shortly after said date the aforesaid firm sold out all its stock, debits, and credits to various persons, who transferred them to the plaintiff, José E. Morales, on April 5, 1907, from which date Morales was in charge of all the transactions of the said firm.

"Second. That Jacinto Blanco was requested by said firm, Delgado & Díaz, to make payment of the sum owing, which request was again

made by the plaintiff, all the steps taken to make said collection availing nothing.

"Third. That the other defendant, Rafael Arce, brother-in-law of Jacinto Blanco, was advised several times of the circumstances under which Blanco was in relation to his creditors in order that he should use his influence with his brother-in-law to the effect that the latter should make payment of the debts which he had contracted, among which appeared that of the plaintiff.

"Fourth. That knowing what was happening to Blanco, his brother-in-law, Arce, always made the other creditors believe that the sums owing would be properly paid by Blanco, over whom he exercised great influence.

"Fifth. That upon Blanco being requested to make payment to the plaintiff of the sum of $403.25 which he owed, and upon Blanco being notified as aforesaid, he sold to Arce all his rights and actions in the inheritance of his parents with the sole purpose of defrauding his creditors, among whom was the plaintiff, by virtue of the assignment made on April 5, 1907.

"Sixth. That the assignment of rights and actions from Blanco to Arce was subsequent to the date on which Blanco contracted his debt with the firm of Delgado & Díaz, and subsequent also to the date on which the requests and advices referred to were respectively made to Blanco and Arce.

"Seventh. That the plaintiff, being unaware of the fraudulent transfer which was made by Blanco in favor of Arce, presented a complaint before the Municipal Court of Caguas for the collection of the $403.25 which Blanco was owing him, which suit was concluded by the rendition of a judgment against Blanco which was affirmed by the District Court of Humacao and the Supreme Court.

"Eighth. That a writ of execution having been issued against the defendant, Blanco, the judgment could not be made effective inasmuch as Blanco did not possess any property but that which he had fraudulently transferred to the defendant, Arce.

"Ninth. That by virtue of the assignment of rights and actions made by Blanco in favor of Arce the latter took part in the proceedings instituted for the division of the estate belonging to the parents of Blanco and all the property belonging to the other defendant was adjudicated to him, and appears in the name of Arce.

"Tenth. That both defendants, Blanco and Arce, have prejudiced the plaintiff on account of said fraud in a sum greater than $600, which he has been required to spend in lawyers' fees, judicial and extrajudicial expenses for the best course of the litigation and pro-

ceedings which were brought about by the fraudulent agreement referred to.

"Eleventh. That the plaintiff's credit against Blanco, considering the interest due and the expenses incurred, amounts to a sum greater than $500."

The complaint ends with the prayer that a judgment should be rendered in favor of the plaintiff and against the defendants, with the following declarations:

"First. Declaring the rescission and nullity of the deed of assignment of rights and actions executed by Jacinto Blanco Carvajal in favor of his brother-in-law, Rafael Arce Rollet, on March 12, 1907, before the notary of Caguas, Mr. José A. Cajas y Machado, inasmuch as it was made in fraud of creditors.

"Second. Declaring likewise null and void the adjudication made to the defendant, Arce, of the property which was to belong to the other defendant, Blanco, in the testamentary proceedings of his deceased parents, which adjudication was carried into effect by a deed of adjudication and distribution which was executed on November 22, 1908, before the notary of Caguas, Don Lorenzo Jiménez García.

"Third. Condemning the defendants, Blanco and Arce, to the payment of $600 as damages suffered by the plaintiff on account of the fraudulent acts executed and which were prejudicial to him.

"Fourth. Imposing all the costs of the suit and attorneys' fees upon the defendant."

Both defendants having been summoned, Rafael Arce presented a motion to the court requesting that the plaintiff, Morales, should be required to amend his complaint, separately stating therein the several actions joined, which motion was overruled by the court.

Subsequently the defendant, Arce, himself presented demurrers to the complaint because the same did not state facts sufficient to show the several causes of action therein specified, or any of them; the defects of parties defendant as to the nullity of the adjudication made to Rafael Arce, as assignee of Jacinto Blanco, in the division of the property left at the time of the death of Blanco's parents, and because the complaint is unintelligible and ambiguous as to the action for

damages in regard to the defendant, Arce, which demurrers were also overruled by order of November 30, 1910.

Finally Arce answered the complaint, admitting in his answer that by a public deed of March 12, 1907, Blanco made him an assignment, for a good consideration, of the rights and actions which belonged to him according to the testamentary proceedings in relation to the inheritance of his deceased parents, said assignment having been agreed upon in June, 1906, when no current account had yet been opened with Delgado & Díaz; and that by virtue of said assignment all the property which was to belong to Blanco in the proceedings instituted for the division of the estate was adjudicated to him; but he denies the existence of a credit of $403.25 against Blanco and in favor of the firm Delgado & Díaz, denying also that any fraud had been committed on the part of Blanco and Arce in the assignment to prejudice the plaintiff, Morales, in his alleged credit; and he also denies that Blanco had become insolvent on account of the assignment made in his favor of the rights and actions hereinbefore referred to.

Arce also alleged as new matter, in the first paragraph of his answer, "that Jacinto Blanco had a current account with Delgado & Díaz which showed a balance in his favor"; that Delgado & Díaz instituted a proceeding in bankruptcy before the United States District Court for Porto Rico, presenting therein a statement of their credits and debits, wherein it is stated that the credit against Jacinto Blanco shows a balance in his favor; that the only credit against Jacinto Blanco which was assigned by Delgado & Díaz, and by their assignees to José E. Morales, is one of $30, to which reference has been made in the balance sheet or statement of debits and credits which was presented by Delgado & Díaz in said bankruptcy proceedings; and that Jacinto Blanco does not owe anything by balance of his current account for goods or cash received from the firm of Delgado & Díaz, of Aguas Buenas, nor for any other reason, to José E. Morales, or to Delgado & Díaz, or to any other natural or juridical person.

In the third paragraph of his answer the defendant alleged "that he called the attention (in regard to the conversation which Morales had with him in reference to the debt of Blanco) of his brother-in-law, Mr. Blanco, who answered assuring him that he was a creditor of Delgado & Díaz and that the latter had not liquidated with him his current account, in which they had not given him credit for several items of coffee which were delivered by him to said firm."

He also alleged "that a suit having been brought by José E. Morales against Jacinto Blanco for the collection of the debt which is said to be due in the first allegation of his complaint, he knew that Delgado & Díaz had prepared a statement of their debits and credits wherein they confessed that the credit against Blanco amounted only to $30," which statement was presented in the bankruptcy proceedings to which reference has been made.

He also alleges in the twelfth paragraph "that in the suit in intervention of ownership of certain properties attached by José E. Morales to secure the effectiveness of the judgment rendered against Jacinto Blanco he alleged that he was the owner of the property attached as the same was adjudicated to Mr. Arce Rollet in the proceedings instituted for the division of the property inherited from Jacinto Blanco González and Mrs. Encarnación Carvajal y Blanco, which adjudication had been made to Arce as representative in said inheritances of Mr. Jacinto Blanco Carvajal by virtue of the assignment of rights and actions in the inheritance which was executed in favor of said Arce by the heir, Mr. Blanco, and which was made to appear in a public deed on March 12, 1907."

And it is alleged by the defendant, Arce, "that said complaint was answered by Morales without requesting or presenting any counterclaim thereto, and alleging that the contract of assignment of rights and actions was null or rescindable, inasmuch as it was executed in fraud of creditors, and alleging, also, that the matter regarding the ownership of the property attached and the validity of said title of

assignment was argued in said suit and a judgment rendered therein which may be considered as a final one."

The eleventh, thirteenth, fourteenth, and fifteenth, allegations set up in the answer are as follows:

"Eleventh. The defendant, Arce, denies for lack of information the eleventh allegation of the complaint, alleging, on the contrary, that Blanco does not owe anything to Morales.

"Thirteenth. It is also alleged by Arce that in the suit to which reference has been made in the preceding paragraph of this answer, the validity of the contract of assignment hereinbefore mentioned which was executed by Blanco in favor of Arce was argued, and that a judgment was rendered therein sustaining the suit in intervention which was brought in accordance with said contract, said judgment having been consented to by José E. Morales, who did not take any appeal from the same, and it therefore became final.

"Fourteenth. It is likewise alleged that at the distribution of rights and actions—that is, of the properties belonging to Mr. Jacinto Blanco González and his wife—besides Mr. Arce, the heirs, Mrs. Carmen Blanco Carvajal, Mrs. Cándida Blanco Carvajal, and Mrs. Gertrudis Blanco Carvajal, appeared, the latter through her usufructuary heir, Mr. Ramón de las Bárcenas, whom the nullity requested of the adjudication made in said proceedings in favor of Arce might affect.

"Fifteenth. It is alleged as a final defense that should the nullity of the contract of assignment which was executed by Blanco in favor of Arce be declared, the parties executing said contract—among whom appears Mr. Arce, who is married to Mrs. Carmen Blanco Carvajal—should be under the obligation of returning what they had received under said contract, and that by virtue of said contract Arce acquired some real estate after his marriage."

All the allegations which have been quoted were excluded from the answer of Arce by order of the court by virtue of a motion that was presented by the plaintiff.

After the trial of the case the Court of Humacao rendered a judgment on June 5 of the year last past, with the following declarations:

"First. That it should declare, and does hereby declare, rescinded and null the contract of assignment of rights and actions executed by Jacinto Blanco Carvajal in a public deed dated March 12, 1907,

before the notary of Caguas, José A. Cajas y Machado, in favor of Rafael Arce Rollet, inasmuch as it was made in fraud of creditors.

"Second. There is likewise declared null and void the adjudication made in favor of Rafael Arce Rollet in the property which was to belong to Jacinto Blanco Carvajal in the testamentary proceedings of his deceased parents, said adjudication having been made in a deed of partition and adjudication which was executed before the notary of Caguas, Mr. Lorenzo Jiménez García, on November 22, 1908.

"Third. That the plaintiff, José E. Morales, should recover from the defendants, Blanco and Arce, the amount of the credit, to wit, $403.25, and also the legal interest up to this date, and all the costs, expenses, and attorneys' fees."

From this judgment an appeal was taken to this court by Rafael Arce and the case was heard on May 3 last.

The appellant claims that the trial court fell into eleven errors, which are set forth in his brief as follows:

"First. In overruling the motion presented by the defendant, Rafael Arce Rollet, to the effect that the plaintiff should amend his complaint, separately stating therein each of the causes of action which had been joined in said complaint.

"Second. In overruling the demurrer filed by the defendant, Rafael Arce, against the several causes of action set forth in the complaint, and against each of said actions, on the ground that the same did not show sufficient facts to constitute the causes of action which had been joined, or any of them.

"Third. In overruling the demurrer presented by the defendant, Rafael Arce Rollet, to the action claiming the nullity of the adjudication made in favor of the defendant, Arce, in the proceedings taken for the distribution of the estate of Jacinto Blanco González and Encarnación Blanco, formerly Carvajal and Delgado, inasmuch as the other interested parties and other persons intervening in said distribution of the estate were not included.

"Fourth. In overruling the demurrer interposed to said action for damages on the ground that the complaint presented in said action is ambiguous and unintelligible.

"Fifth. In ruling that the part of the allegations first, third, and eleventh, set forth in the answer presented to said complaint, and which were previously included in his brief, should be stricken out.

"Sixth. In ruling that the twelfth allegation contained in the answer to the complaint should be stricken out.

"Seventh. In ruling that the thirteenth allegation of the answer to the complaint should be stricken out.

"Eighth. In ruling that the fourteenth allegation set forth in the answer to the complaint should be stricken out.

"Ninth. In ruling that the fifteenth allegation of the answer to the complaint should be stricken out.

"Tenth. In considering that a credit existed for the amount of $403.25 against Jacinto Blanco Carvajal which affected the assignment of rights and actions executed by said Blanco in favor of Rafael Arce.

"Eleventh. In considering that Jacinto Blanco Carvajal was insolvent and unable, therefore, to make payment."

These numerous errors may be considered by us in three groups for greater convenience and to avoid unnecessary prolixity and to save time. In the *first* group we will assign the first four errors enumerated relating to the dismissal of the motion and exceptions presented by the defendant; in the *second* group we will include those numbered 5, 6, 7, 8, and 9, complaining that the trial court eliminated from the record certain allegations set out in the answer of the defendant, leaving for the *third* group the last two errors assigned alleging that the trial court improperly considered that the evidence was sufficient to show the existence of a credit in favor of Morales and against Blanco amounting to $403.25 and the insolvency of the latter.

I. Then, in the first place, as to the court having dismissed the motion of the defendant, Arce, that plaintiff should be required to modify his complaint and set out his causes of action separately, we may simply say that only one cause of action is really alleged in the complaint—that is, the frauds alleged on account of which the plaintiff is seeking a rescission of the contract and the annulment of other proceedings necessarily dependent thereon. Besides, if there was an improper joinder of different causes of action the defendant should have made it the object of a special exception or demurrer, which he failed to do. *McFarland* v. *Holcomb,* 123 Cal., 87; *Lawrence* v. *Montgomery,* 37 Cal., 183.

A mere reading of the complaint is sufficient to show that the same contains allegations of sufficient facts to constitute a cause of action. Secs. 122 and 133 of the Code of Civil Procedure.

The defect of parties defendant should appear from the allegations in the complaint in order to support an exception taken on that account. Matters not apparent from the complaint cannot be considered in deciding the exceptions thereto. Sec. 105, Code of Civil Procedure. And the exception itself is defective in not giving the names of the parties who, as it claims, are necessary parties defendant in this cause. Bliss on Code Pleading, Sec. 411.

The complaint is also sufficient in so far as it relates to damages, as it complies with section 1265 of the Civil Code.

II. Then did the court properly eliminate from the answer the several defenses relied on by the defendant? In the first place, all that portion of the answer in which it was sought to reopen the question of the indebtedness of Blanco to Delgado & Díaz was impertinent, since the matter had been settled by a final judgment of three courts in their regular gradation of appellate procedure, and also must be regarded as *res judicata.* In the *second* place the question of a fraudulent conveyance could not be raised by the defendant, Morales, in the proceeding for the trial of the right of property, since the same was not one existing in favor of the defendant and against the plaintiff, as specified in section 111 of the Code of Civil Procedure, Blanco being a codefendant of Morales in said proceedings, and Arce the plaintiff. In the present case both Arce and Blanco are necessarily defendants, and the question of a fraudulent conveyance could not have been litigated in the proceedings for the trial of the right of property which were instituted by Arce. Therefore, it is clear that Morales is not within the requirements of section 112 of the Code of Civil Procedure. The matter of counterclaims relates more particularly to questions of accounts and money demands and was not intended to be applied to matters

of title to land or other property.  Bliss on Code Pleading,
Sec. 390.

In the *third* place the present action is one that never could
have been combined with that in which there was alleged the
right to property which was claimed in a trial for the right of
property, nor could it have been discussed in such a proceed-
ing, so that the judgment in a case of that nature cannot be
pleaded as *res judicata* in a case like this.  A suit of this kind,
to set aside a fraudulent conveyance, has nothing further to
do with the title to the property than pertains to the convey-
ance sued on, and therefore the two cases are entirely inde-
pendent of each other and each must stand or fall on its own
merits or demerits.

And *fourthly* the fourteenth and fifteenth paragraphs of
the answer were properly stricken out, as they did not comply
with the rules of good pleading.

Then we find no error in the rulings of the court in clear-
ing the pleadings of useless and improper allegations and
reducing the issues to that in regard to the existence of fraud
in making the conveyance attacked.

III.  This brings us at last to the main question in the
case—that is, whether or not there is sufficient evidence to
show fraud in the transaction made between Blanco and Arce,
and, incidentally, the existence of a debt against Blanco, and
his insolvency.  In considering this question as a whole, we
find it a compound proposition involving various secondary
matters which arose in the course of the discussion.  As to the
existence of the debt which it is alleged that Blanco owes to
Morales, the record in the suit which the latter brought
against the former for collection of money, and which was
introduced in evidence by mutual consent of the parties,
showed that a judgment was rendered in favor of the respond-
ent and against Blanco in the District Court of Humacao
for $403.25.  This judgment was rendered on June 29, 1908,
on appeal from the municipal court, and affirmed by the Su-
preme Court on April 20 following.  *Morales* v. *Blanco,* 15

P. R. R., 237. Then there can be no doubt, in view of all the evidence presented at the trial, that Blanco was indebted to Morales at the time the conveyance was made to Arce.

And let us see if the collection of this debt was prevented by the action of the appellant and his transactions with Blanco. The record shows that the marshal levied an attachment on April 24, 1904, in order to secure the effectiveness of the judgment aforesaid, in case it should be rendered, on two pieces of property, one urban and the other rural, which Blanco had inherited from his father. In consequence of the proceedings to try the right of property in regard to these two estates Morales was prevented from collecting his credit. A public deed introduced in evidence shows that on March 12, 1907, Blanco transferred to Arce all his rights and claims which he had in the estate of his father. And the evidence of the marshal and his deputy shows that the writ of execution issued against Blanco was lost during the proceedings and could not be found, and further that the writ could not be made effective because Blanco had no other property than that which was transferred to Arce. Therefore it should be considered as an established fact that it was impossible to collect the amount specified in the judgment rendered against Blanco.

Was the transfer made by Blanco to Arce in fraud of creditors? It is set forth in section 1258 of the Civil Code that contracts executed in fraud of creditors may be rescinded when they cannot recover in any other manner what is due them. Manresa says, commenting on the corresponding sections of the Spanish code (1290 and 1291): ''The rescission of a contract made in fraud of creditors is justified by the damages suffered by a person who is not a party to the contract but who might be affected thereby.'' 8 Manresa, 732. The Supreme Court of Spain also says, in a decision made on October 25, 1895, that ''Fraudulent and simulated contracts may be rescinded, according to section 1291 of the Civil Code.''

Therefore, it appears from the deed heretofore referred

to that the transfer was made and there was shown by the judgment mentioned the existence of the debt which was still unsatisfied. The evidence also shows that Arce was the brother-in-law of Blanco, acted as his attorney, and knew all about the debt and the impossibility of collecting the same from the fact that Blanco had no other property than that which he transferred to Arce. From all these *indicia* the fraudulent nature of the conveyance is clearly evident.

But did the contract executed between Blanco and Arce prevent Morales from collecting his claim? The action for a rescission of a contract on account of fraud is only a subsidiary one and can be enforced only when the injured person has no other legal remedy whereby to obtain reparation. Sec. 1261, Civil Code. But the Supreme Court of Spain, in a decision rendered on November 9, 1901, in construing an article similar to our section 1261 (Art. 1294, Spanish code), says that though the action may be a subsidiary one it is not because it lacks any of the elements of a principal action. It is independent of any other, but, according to the code, it cannot be enforced as long as the injured persons have any other means to obtain reparation. But Morales has no other remedy by which to collect his credit, as it appears to be clearly proved that Blanco has no other property but that which he transferred to his codefendant, Arce. The action therefore lies.

Finally, we arrive at the point on which the whole case hinges—that is, the existence of fraud. Our Civil Code, section 1264, reads as follows:

"Contracts by virtue of which the debtor alienates property, for a good consideration, are presumed to be executed in fraud of creditors.

"Alienations for valuable considerations made by persons against whom a condemnatory judgment in any instance has been previously rendered, or a writ of seizure of property has been issued, shall also be presumed fraudulent." Sec. 1264, Civil Code.

Let us see how the corresponding section of the Spanish code has been construed by the great commentators.

It is said by Manresa, upon construing section 1297 of the Spanish Civil Code, which is identical with the corresponding section of our code, that:

"The most common supposition in transfers made in fraud of creditors is not the one relating to conveyances made for a good consideration, as it is stated therein, but that in regard to actual or supposed transfers made for a good consideration to the supposed heirs of the debtor and under the appearance of transfers made under an onerous consideration." 8 Manresa, 754.

And it is said by Scaevola, in his commentaries on section 1291, paragraph third:

"Finally, and in order to explain the words used by the code in this third paragraph, we will consider that it does not refer only to transfers made in the manner of a sale but as a donation and assignment, and also as it is stated in section 39 of the Mortgage Law, of a creation or renunciation of rights."

And referring to the matter of fraud, it is stated by the same commentator:

'This incident constitutes in the first place the facts by virtue of which the transfer or renunciation of properties and rights is made. These facts, the selling of the thing, inscription in favor of a third party, the relation between the seller and the purchaser, the non-delivery of the price and the prejudice caused to the creditors, are indispensably reserved to the consideration of the courts, but in such cases there may be either good or bad faith, knowledge of the prejudice, and consciousness of the deceit, sincerity, and noble purposes." 20 Scaevola, 909.

Let us examine the record introduced in regard to this matter. There appear from the documental evidence an account against Blanco, bearing a date previous to March 12, 1907, and the transfer of rights and actions made from Blanco to Arce on that date; and it appears also from the oral testimony that Arce, as assignee, had knowledge of the existence of the credit. He himself acted as counsel for his

brother-in-law, Blanco, in the suit for collection of a sum, taking part in the settlement of said account and made offers of payment; and this defendant, knowing all this and being an attorney at law and therefore a person acquainted with the law, accepted the transfer of the only property that Blanco might have been in possession of and took charge of the same for a less value than that which the same appeared to have at the time of the distribution of the inheritance, no evidence having been presented having the effect of rebutting such presumption of fraud.

In regard to the necessary evidence to show fraud, it is said by the American decisions:

"The discovery of the fraudulent intention is seldom the object of direct and positive proof. To require conclusive evidence in a case of fraud would be to attack the ends of justice and to obstruct the same; the law, therefore, only requires a reasonable degree of certainty, and this is the conclusion arrived at by the decisions." *Southern L. Ins. Co.* v. *Wilkinson,* 53 Cal., 153; *Strong* v. *Hines,* 35 Miss., 201.

It must also be observed that in order to establish a fraudulent intention among persons having confidential relations satisfactory proof only is required. Rice on Evidence, vol. 2, p. 955.

Our statute further provides:

"Neither shall rescission take place when the things which are the object of the contract are legally in the possession of third persons who have not acted in bad faith." Sec. 1262, par. 2, of the Revised Civil Code.

Can the defendant, Arce, be considered as a third party? The Supreme Court of Spain, in construing this section of the code, states:

"The person intervening in the contract as purchaser is not a third party, nor can he be considered as such." Decision of Oct. 25, 1895.

Then there remains for consideration only the question of

the damages which are claimed in the complaint. It is said, in section 1265 of the Revised Civil Code:

"Any person who may have acquired in bad faith things alienated in fraud of creditors must indemnify the latter for the losses and damages caused to them by the alienation whenever, for any reason whatsoever, it should be impossible for him to return them."

And it is said by Manresa, in construing the corresponding section in the Spanish Civil Code—that is, section 1298—that:

"The liability includes the damages that the transfer might have caused—that is, the amount of the credit, and, if necessary, that of the interest—and in a measure in which they could have been satisfied from the amount of the thing transferred, besides the expenses incurred by the suit instituted in the action of rescission." 8 Manresa, 761.

From a careful consideration of all the facts presented in the record and with due reference to the legal principles invoked by counsel, and the authorities, both Spanish and American, which we have had an opportunity to examine, we find that the trial court was fully justified in rendering the judgment dated June 5, 1911, and it should be in all things affirmed.

*Affirmed.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.